**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

LAVON BARTHOLOMEW,                                  **COMPLAINT**
DENZEL BOBB,
J'CHAD BOYCE,                                       **JURY TRIAL DEMANDED**
SHAUNDELL HENNEGAN,
CURTIS MILLER,                                      Index No.
SHAQUWEICE MILLS,

                Plaintiffs,

    -against-

THE CITY OF NEW YORK,
POLICE OFFICER RAMIREZ, Shield No. 22014
POLICE OFFICER VASQUEZ,
P.O.'s John Doe and Jane Doe,

                Defendants.

_____

## COMPLAINT

Plaintiffs by their attorney Gregory G. Smith, Esq. complaining of defendants

CITY OF NEW YORK, et al., alleges:

## PRELIMINARY STATEMENT

1.      This is a civil rights action against the City of New York ("City") based on

and arising out of the wrongful acts and omissions of the New York City Police

Department ("Police Department" or "NYPD") and certain law enforcement officers in

which the Plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. §

1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution,

and Article I Section 12 of the New York State Constitution and pendant state  charges.

2.      Plaintiffs claims arise from April 5, 2020 and April 8, 2020 incidents in

which Officers of the New York City Police Department ("NYPD"), acting under color

of state law, intentionally and willfully subjected plaintiffs to, inter alia, illegal stops, false arrest, false imprisonment, assault and battery.

3.    Plaintiffs seek monetary damages (special, compensatory and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as this court deems just and proper.

## JURISDICTION

4.    This action is brought pursuant to 28 U.S.C. Section 1331; 28 U.S.C. Section 1343; 42 U.S.C. Sections 1983, 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. The amount in controversy exceeds $10,000 excluding interest and costs.

5.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under the state law that are so related to claims in this action within the original jurisdiction of this Court and that form part of the same case or controversy.

## VENUE

6.    Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b) because the Defendant does business and is located within the Eastern District of New York and because all or a substantial part of the acts or omissions giving rise to plaintiffs' claims occurred within the Eastern District of New York.

## PARTIES

7.    Plaintiff, Lavon Bartholomew, hereinafter ("Plaintiff" or "Bartholomew") resides in Brooklyn, New York, and is a citizen of the United States.

8.      Plaintiff, Denzel Bobb, hereinafter ("Plaintiff" or "Bobb") resides in Brooklyn, New York, and is a citizen of the United States.

9.      Plaintiff, J'Chad Boyce, hereinafter ("Plaintiff" or "Boyce") resides in Brooklyn, New York, and is a citizen of the United States.

10.     Plaintiff, Shaundell Hennegan, hereinafter ("Plaintiff" or "Shaundell") resides in Brooklyn, New York, and is a citizen of the United States.

11.     Plaintiff, Curtis Miller, hereinafter ("Plaintiff" or "Miller") resides in Wyandanch, New York, and is a citizen of the United States.

12.     Plaintiff, Shaquweice Mills, hereinafter ("Plaintiff" or "Mills") resides in Brooklyn, New York, and is a citizen of the United States.

13.     All Plaintiffs referred to collectively as "Plaintiffs".

14.     At all times hereinafter mentioned the CITY OF NEW YORK (or "the City") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York. At all times relevant hereto, Defendant City of New York, acting through the New York City Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline, retention and conduct of all NYPD personnel. In addition, at all times here relevant, defendant City of New York was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York. Further, under the Charter of the City of New York, the City is responsible for the conduct of municipal agencies such as the New York City Police Department or ("Police Department").

15.     At all times hereinafter mentioned the NEW YORK CITY POLICE DEPARTMENT was and is a municipal agency of the CITY OF NEW YORK and was charged with the responsibility of enhancing the quality of life in New York City by working in accordance with constitutional rights to enforce the law.

16.     At all times relevant herein defendant Police Officer Ramirez was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Ramirez took part in the unlawful events that occurred on April 5, 2020 and was under the command of the 073 Precinct. At all times relevant defendant Ramirez acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Ramirez is sued in his official and individual/personal capacity.

17.     At all times relevant herein defendant Police Officer Vasquez was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Vasquez took part in the unlawful events that occurred on April 5, 2020 and was under the command of the 073 Precinct. At all times relevant defendant Vasquez acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Vasquez is sued in his official and individual/personal capacity.

18.     At all times relevant herein defendant Police Officers John and Jane Doe were employed by the City of New York through the New York City Police Department ("NYPD"). At all times relevant defendants acted under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of the NYPD.  John and Jane Doe Police Officers are sued here in their official and personal capacity.

-4-

## ADMINISTRATIVE PROCEEDINGS

19.     On April 5, 2020, within ninety days after the claims arose, plaintiffs caused a Notice of Claim, in proper form, to be duly filed with the Comptroller's Office and 30 days has passed and the claims have not been paid or adjusted. This action is brought within one year and ninety (90) days limitation of time applicable to state law claims against the City of New York.

## STATEMENT OF CLAIM

### APRIL 5, 2020 EVENTS

20.     On April 5, 2020 at approximately 5:11 p.m. plaintiff Shaundell Hennegan, a/k/a "Pooh Bear," Tysean Hennegan a/k/a "Ty," and plaintiff J'chad Boyce a/k/a "Talle" were standing in front of a residential apartment building located at 788 Howard Avenue, Brooklyn, New York.

21.     Plaintiff Curtis Miller a/k/a "Curt" was seated in the front passenger seat of a 2019 black Jeep Cherokee owned by Tysean Hennegan. The Jeep Cherokee was double parked in front of 788 Howard Avenue.  At all times relevant hereto the Jeep Cherokee engine was turned off and the keys were not in the ignition.

22.     Two  (2) Hispanic male police officers (Ramirez and Vasquez) were driving a white and blue marked police car. Police yelled at the men and said, in sum and substance, your not standing six feet apart. The marked police car drove around the block and came back and stopped in front of the double-parked Jeep Cherokee. Two police officers exited their vehicle and said to the men in substance your not socially distanced so either go into the building or go into the car referring to the Jeep Cherokee. Whereupon, plaintiff Shaundell Hennegan went into the front drivers side seat of the Jeep Cherokee and sat down.

23.     Upon information and belief, Police Officer Ramirez demanded to see Shaundell Hennegan's driver's license. Plaintiff Shaundell complied.

24.     Upon information and belief, Police Officer Vasquez, described as a bald Hispanic male, demanded to see identification from plaintiff Curtis Miller too. Miller replied "no" and P.O. Vasquez replied show me some I.D. or I will take you to jail. Curtis retorted, well then take me to jail because I am not driving the car and I am not doing anything wrong. At that time plaintiff Miller began to video record the scene with his cell phone when PO Vasquez slapped the cell phone out of Miller's hand and began to strike Miller about the body with a closed fist.

25.     At approximately the same time Shaundell Hennegan began to video record the Miller incident when upon information and belief, Ramirez and several other police officers began to physically pummel plaintiff Shaundell by striking him several times by use of extendable bit sticks on or about his thighs, knees and lower back. A police officer placed his knee into plaintiff Shaundell's lower back while bending his arms upward.

26.     Plaintiffs' Shaundell Hennegan and Curtis Miller were taken to the 073 Precinct stationhouse. When placing plaintiff Curtis Miller into the back of the police car PO Vasquez snidely asked plaintiff Miller how does it feel getting beat up?  While at the 073 Precinct stationhouse P.O. Ramirez forcibly sat plaintiff Miller down in a chair by grabbing him by his shirt collar while he was hand cuffed behind his back after Miller said that he preferred to stand up.

27.     While at the 073 Precinct stationhouse PO Ramirez said to Miller, I didn't touch you—but I fucked your two boys up! Whereupon, plaintiff Miller reminded Ramirez that he choked him in the precinct.

28.    Plaintiffs Shaundell Hennegan and Curtis Miller were released from the back door of Central Booking at approximately 3:00 p.m. on April 6, 2020.  Shanudell Hennegan sustained certain injuries including, but not limited to, a swollen and lacerated left leg and contusions to both legs. He suffered pain in the lower back for at least five (5) days together with mental and emotional pain and suffering.

29.    Plaintiff Curtis Miller sustained contusions to the ribs, the right shoulder and the right thigh, together with mental and emotional pain and suffering.

30.    Neither Shaundell Hennegan nor Curtis Miller were permitted to make a phone call.

31.    Plaintiff J'Chad Boyce a/k/a "Tallie" male black, was also struck and beat about his face and body by Police Officers Vasquez and Ramirez while standing in front of 788 Howard Avenue on April 5, 2020 sometime shortly after 5:00 p.m.   As plaintiff Boyce is attempting to video record the assault on plaintiffs Miller and Shanundell, Vasquez charges at plaintiff Boyce and strikes him with a closed fist in the face twice and by this time police back up had arrived on the scene, consisting of several police cars and police officers from the 073 Precinct. Other unknown officers, about six or seven, jumped in and began to strike plaintiff Boyce about his legs with batons and punch him in his ribs with closed fists, then police tased plaintiff Boyce on his backside (butt).  Police slammed him to the ground and placed a knee in his neck and handcuffed him behind his back. Plaintiff was placed in the back of a police car and taken to the 073 Precinct.

32.    Upon information and belief, the source of which is plaintiff Boyce, Officer Vasquez taunted plaintiffs Shaundell, Curtis and Boyce every time he passed by them in the precinct by throwing up hand gestures and sticking his tongue out.

33.    J'Chad Boyce was released with Shaundell and Curtis at approximately 3:00 p.m. on April 8, 2020 from the back door of Central Booking.

34.    Upon information and belief, none of the three arrested plaintiffs were fingerprinted, photographed or charged with any crime(s). They did not go to court and they did not see a judge.

35.    When plaintiff Boyce, Shaundell and Miller returned to the precinct on April 6, 2020 to retrieve their personal belongings, P.O. Vasquez attempted to intimidate them and said in sum and substance while pointing at plaintiff Boyce, don't get beat up again, be safe out here.

36.    Injuries to J'Chad Boyce were: four lacerations, contusions and swelling to the face, lip, jaw pain, ankle pain, severe back pain, wrist contusions and lacerations, pain and suffering, mental emotional pain and anguish.

<u>APRIL 8, 2020 EVENTS</u>

37.    On April 8, 2020 at approximately 10:10 p.m. plaintiff Denzel Bobb was seated in the driver's seat of his automobile described as a blue 2008 Jeep Cherokee. Plaintiff Shaundell was seated in the front passenger seat of the car and plaintiff Shaqweice Mills was seated in the rear seat of the car driven by Denzel. Plaintiff Bobb's car was double parked in front of 788 Howard Avenue, Brooklyn, New York. Plaintiff Bobb drove around the block looking for a parking space. As plaintiff Bobb was about to park in a parking space in front of a laundromat located on Howard Avenue between Dumont and Levonia in Brooklyn, two unmarked police cars stopped the car. One police car stopped in back of the car and the other police car stopped in front of the car. The police were dressed in plain clothes.

38.     One of the police officers described as male white with a beard, heavy build, in his 30's, wearing a bullet proof vest, wearing a grey short sleeved shirt and a cap on his head ask plaintiff Denzel if he knew why he was being pulled over? Plaintiff Bobb answered no. Officer replied because your left tail-light is out. More questions and answers ensued when the officer asked Bobb if the car was stolen? Bobb responded no, the officer replied ae you sure? Bobb said yes. The officer then asked plaintiff Bobb for his automobile registration.

39.     As plaintiff Denzel Bobb opened the glove compartment of this vehicle to retrieve the registration he was forcefully pulled out of the vehicle, thrown to the ground and cuffed behind his back. Police raised plaintiff back up to his feet whereupon the same male white bearded heavy-built officer punched plaintiff Bobb in his stomach twice with a closed fist causing Bobb to collapse to the ground again whereupon a clean shaven Asian/Chinese American police officer wearing a cap and police vest put his knee into the middle of Bobb's back and pressed really hard hurting Bobb in his front chest sternum area. The registration for the Jeep Cherokee was retrieved from the glove compartment.

40.     Denzel Bobb had taken a shot of Jamaican rum, honey and lime to fight off a cold just prior to getting into the car to find a place to park it.

41.     Police took plaintiff Denzel Bobb to the 073 Precinct stationhouse. He was charged with Driving While Under the Influence ("DWI"). On April 9, 2020 plaintiff Bobb pled guilty to a traffic infraction in full satisfaction of the charge filed against him.

42.     Plaintiff Denzel Bobb suffered pain and injury to the sternum area of his chest, both wrists were hurt as the result of handcuffs being placed on too tight, scrapes

and scratches to his arm(s) and shoulder(s).  Plaintiff also suffered severe pain to his lower and middle back and to his neck.

43.    On April 8, 2020 at approximately 10:10 p.m. plaintiff Lavon Bartholomew was walking in the vicinity of 824-820 Howard Avenue between Dumont and Lavonia in front of a laundromat when he saw a black Ford Taurus sedan stop plaintiff Denzel Bobb's Jeep Cherokee up ahead and saw police pull Denzel Bobb out of the vehicle and begin to punch him with their closed fists. Plaintiff Bartholomew saw four (4) plainclothes police officers described as three (3) white male officers and one (1) Asian officer. Plaintiff Bartholomew began to video record the scene with his cell phone.

44.    One plainclothes police officer walked over to plaintiff Bartholomew and told him to turn the light off his camera. Plaintiff complied and that officer walked away. Another plainclothes police officer came over to plaintiff Bartholomew and began to argue with plaintiff. The plainclothes police officer slapped the cell phone out of plaintiff's hand and the cell phone went flying.  As plaintiff went to retrieve his cell phone two police officers tackled him and beat him along with a third officer for approximately two (2) minutes with their closed hands and feet.

45.    One of the offices placed his knee in plaintiff's back, handcuffed him behind his back and then smashed his head against the concrete sidewalk while plaintiff was still handcuffed behind his back. Plaintiff was then dragged by two officers to the black Ford Taurus unmarked police car and taken to the 073 Precinct stationhouse. Plaintiff was charged with assault on an officer and obstruction of governmental administration.  Plaintiff was offered and accepted an Adjournment in Contemplation of Dismissal ("ACD") saw the judge over skype.

-10-

46.     The plainclothes officers are described as three (3) white males wearing beards and one clean shaven Asian American all in their early to mid-30's. At the 073 Precinct stationhouse one of the officers attempted to intimidate plaintiff by saying in sum and substance to him if you want to fight we could go to the back or upstairs.

47.     Plaintiff Lavon Bartholomew suffered injuries to his right wrist where the handcuffs were on too tight, right side eyebrow (orbital bone) facial laceration and contusions and swelling to the left eye. Eyes were very sensitive to the light that caused substantial pain, injury and suffering. Vomiting throughout the night. Swelling and bruising everywhere on the body, scrapes on the face, pain in lower back, pain in neck as of April 15, 2020 plaintiff was still complaining of pain.

48.     On April 8, 2020 at approximately 10:10 p.m. plaintiffs Shaundell Hennegan and Shaqweice Mills were taken out of the Jeep Cherokee. The Asian American officer made them sit on the ground behind the Jeep Cherokee rear bumper with their hands up for the entire time of the incident. The Asian American officer unholstered his yellow taser and brandished it at them saying stay there and don't move. At approximately 12:30 a.m. on April 9, 2020 plaintiffs were released. Shaundell was not charged with anything and not fingerprinted or photographed. Plaintiff Mills was arrested and charged with disorderly conduct, given a Desk Appearance Ticket ("DAT") and told to come back to court on August 5, 2020. He was not fingerprinted nor photographed.

49.     At all times during the events described above, the defendants were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other

during said events. They failed to intervene in the obviously illegal actions against plaintiffs.

50.    During all of the above described events, defendants acted maliciously and with intent to injure plaintiffs.

## MUNICIPAL LIABILITY

### For the Actions of the Police Defendants Pursuant to Policies and Practices In Existence at the Time of This Action

51.    All of the acts by the police defendants described above were carried out pursuant to policies and practices of the City of New York which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant City and its agency, the NYPD.

52.    Defendant City and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the police defendants' wrongful acts; and/or failed to prevent or stop these acts; and/or allowed or encouraged these acts to continue.

53.    The actions of the police defendants resulted from or were taken pursuant to *de facto* policies and/or well settled and widespread customs and practices of the City, which are implemented by police officers, to prosecute and continue to prosecute persons through fabricated and manipulated allegations without adequate basis in fact and/or despite substantial exculpatory evidence known to them and withheld from accused persons.

54.    The existence of such unlawful *de facto* policies and/or well–settled and widespread customs and practices has been known to supervisory and policy–making officers and officials of the NYPD and the City for a substantial period of time.

55.    Despite knowledge of such unlawful *de facto* policies and practices, these supervisory and policy-making officers and officials of the NYPD and the City and their predecessors in interest did not take steps to terminate these policies and practices, did not discipline individuals who engaged in such practices, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or reckless disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the City of New York.

56.    The City's policies and practices in existence at the time of the conduct complained of herein, which caused the plaintiff's injuries herein include, *inter alia*, the following:

    a. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper conduct and investigation at and in relation to a crime scene;

    b. The failure to properly supervise, train, instruct, and discipline police officers with regard to a public stop of an individual(s).

57.    The aforementioned City policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encourage their misconduct as evidenced by the police misconduct detailed herein.

58.    The aforementioned City policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encourage their misconduct as

evidenced by the unlawful stops, detainments, arrests, assaults and batteries as detailed herein are of the type that can be eliminated or drastically curtailed by proper training at the police academy and proper follow-up training courses in the area of constitutional and citizen's Fourth Amendment rights to the Constitution to be free of unreasonable searches and seizures.

59.     The aforementioned unlawful stops, detainments, arrests, assaults and batteries that occurred in the vicinity of Howard Avenue in the Brownsville Section of Brooklyn through police misconduct came as a result of a lack of proper training and sensitivity to the constitutional rights of black and brown peoples that live in urban inner city communities such as inhabited by plaintiffs in Brownsville, Brooklyn and other communities in the City of New York.

60.     Furthermore, the aforementioned unlawful stops, detainments, arrests, assaults and batteries also resulted from a lack of proper police officer discipline, including but not limited to, termination, demotion, reprimand, suspension, loss of pay, re-training, and/or sensitivity training. These are the types of disciplines that should and could alleviate much of the type of unlawful police conduct as is complained of herein.

61.     The City policies, practices and customs in existence at the time of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are further evidenced, *inter alia*, by the following:

62.     Upon information and belief, defendant City and its agency, the NYPD, failed to effectively screen, hire, train, supervise and discipline their police officers, including the defendant police officers herein, for racial bias, lack of truthfulness, and for their failure to protect citizens from the unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers to be in a position to

unlawfully abuse and violate plaintiffs in their physical well-being and their right to be free from unlawful and unjust policing.

63.     On information and belief, the defendant police officers herein may have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to defendant City and its agency, the NYPD, that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiffs herein.

64.     The plaintiffs injuries were a direct and proximate result of the defendants' wrongful policies, practices, customs and/ or usages complained of herein and in existence at the time of the incidents complained of herein and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers.

65.     Defendant City knew or should have known that the acts alleged herein would deprive plaintiffs of their rights, in violation of the Fourth Amendment to the United States Constitutions and Article 1 §§ 1, 6, 11, 12 of the Constitution of the State of New York, including, without limitation, freedom from deprivation of liberty without due process of law.

66.      The defendant City is directly liable and responsible for the acts of its agency the NYPD and of the named and unnamed defendant police officers, because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

67.     The defendant City is also directly liable and responsible for the acts of the individual police officer defendants for state law claims under the doctrine of respondent superior.

## DAMAGES

68.     As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

a.     Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of their person;

b.     Violation of their right to Due Process of law under the Fourteenth Amendment to the United States Constitution;

c.     Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from unreasonable search and seizure;

d.     Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

e.     Physical pain and suffering;

f.     Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g. Loss of liberty.


## FOR A FIRST CAUSE OF ACTION

### (Violation of Rights Secured by 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution)

69.     The above paragraphs are here incorporated by reference.

-16-

70.     Defendants, acting under color of state law, deprived plaintiffs of their civil, constitutional and statutory rights under color of law and have conspired to deprive plaintiffs of such rights and are liable to plaintiffs under 42 U.S.C. § 1983.  Defendants subjected plaintiffs to the foregoing unlawful acts, and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving plaintiffs of rights, privileges and immunities secured by the Constitution and laws, including, but not limited to, those rights, privileges and immunities secured by the Fourth Amendment and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights, privileges and immunities:

71.     Plaintiffs were denied their constitutional right to be free from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

72.     To the extent that any of these constitutional deprivations require a showing of specific intent and/or motive, the individual defendants acted intentionally, maliciously, with racially discriminatory motives and/or with reckless disregard for the natural and probable consequences of their acts.

73.     Defendants conduct also deprived plaintiffs of their right to due process of law under the Fourteenth Amendment to the United States Constitution.

Defendants falsely arrested, assaulted and battered plaintiffs and failed to intervene in each other's obviously unlawful actions.

74.     Defendants' unlawful acts, and omissions, conducted without lawful justification, caused specific physical, mental and emotional harm, economic injury, pain and suffering in violation of plaintiffs' Constitutional rights as guaranteed under 42

U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

**FOR A SECOND CAUSE OF ACTION**
**(Municipal and supervisory liability)**

75.    The above paragraphs are here incorporated by reference.

76.    The City is liable for the damages suffered by plaintiffs as a result of their employees, agents and servants, in that after learning of their employees violation of plaintiffs constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful conditions or events. The City has been alerted to the regular use of excessive force and false arrests caused by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

77.    The aforesaid events were not isolated incidents. The City has been aware for quite some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a mater of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

78.    The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents and servants, in that after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful conditions and events. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

### THIRD CAUSE OF ACTION
**(Conspiracy)**

79.    The above paragraphs are here incorporated by reference.

80.    Defendants agreed to violate plaintiffs' rights in the manner described above. Further defendants made an agreement to cover up the false arrests, assault and battery by charging for example, assault on a police officer and obstruction of governmental administration. Defendants took action in furtherance of this agreement by arresting plaintiff Lavon Bartholomew and attempting to bring charges against him.

81. Plaintiffs were injured as a result of defendants' conspiracy.

### FOURTH CAUSE OF ACTION
**(Constitutional Tort )**

82.    The above paragraphs are here incorporated by reference.

83.    Defendants, acting under color of law, violated plaintiffs rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

-19-

84.     A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

**<u>FIFTH CAUSE OF ACTION</u>**
**(Negligent Hiring & Retention)**

85.     The above paragraphs are here incorporated by reference.

86.     Defendant City, through the NYPD, owed a duty of care to plaintiffs to prevent the loss of liberty and physical, mental and emotional abuse sustained by plaintiffs.

87.     Defendant City, through the NYPD, owed a duty of care to plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiffs or those in a position similar to plaintiffs as a result of this conduct.

88.     Upon information and belief, defendant officers were incompetent and unfit for their positions.

89.     Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous and had previously falsely arrested civilians without probable cause.

90.     Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiffs' injuries.

91.     Because of the defendant City's negligent hiring and retention of defendant officers, plaintiffs incurred the damages described above.

-20-

**FOR A FIFTH CAUSE OF ACTION**
**(Respondeat Superior Against the City of New York)**

92.    The above paragraphs are here incorporated by reference.

93.    Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

94.    As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, plaintiffs were damaged.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally as follows:

A.  In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B.  Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C.  Awarding plaintiffs reasonable attorneys fees, costs and disbursements of this action; and

D.  Granting such other and further relief as this Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

A jury trial is hereby demanded on each and every count of the causes of action as pled herein.

Brooklyn, New York
July 1, 2021

Respectfully submitted,

\s\ *Gregory Smith*
_____
Gregory G. Smith (GS-9900)
Attorney for Plaintiffs
77 Sands Street, 7th Floor
Brooklyn, New York 11201
*Counsel for Plaintiffs*