**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____

LAVON BARTHOLOMEW,                              **AMENDED COMPLAINT**
DENZEL BOBB,
J'CHAD BOYCE,                                   **JURY TRIAL DEMANDED**
SHAUNDELL HENNEGAN,
CURTIS MILLER,                                  Index No. 21-CV-3729(LDH)(LB)
SHAQUWEICE MILLS,

                              Plaintiffs,

          -against-

THE CITY OF NEW YORK,
LT. ALEXANDER BOBO, tax no. 947985
SGT. DARREN CARANELLA, shield no. 26346
P.O. RICHARD CATAPANO, tax no. 961675 a/k/a
ESTATE OF RICHARD CATAPANO
P.O. VINCENT D'ANDRAIA, tax no. 957510
SGT. STEVEN FRANZEL, shield no. 5181
SGT. SAMUEL HUI, tax no. 953978
P.O. CHARLES JI, tax no. 965761
P.O. MICHAEL JOHN, tax no. 961840
P.O. MICHAEL PARSCALE, shield no. 30095
SGT. TROY PEACOCK, shield no. 352
P.O. BRIAN RAMIREZ, shield no. 22014
P.O. CHRISTOPHER READ, shield no. 28035
P.O. STEPHEN RICE, tax no. 964238
P.O. SEAN SLOWSKI, shield no. 17713
P.O. KEITH STARK, shield no. 3636
P.O. JUSTIN VASQUEZ, shield no. 25942
P.O.'s John Doe and Jane Doe,

                              Defendants.


_____


**AMENDED COMPLAINT**

     Plaintiffs by their attorney Gregory G. Smith, Esq. complaining of defendants

CITY OF NEW YORK, et al., alleges:

**PRELIMINARY STATEMENT**

-1-

1.     This is a civil rights action against the City of New York ("City") based on and arising out of the wrongful acts and omissions of the New York City Police Department ("Police Department" or "NYPD") and certain law enforcement officers in which the Plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. § 1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution, and Article I Section 12 of the New York State Constitution and pendant state  charges. This amended complaint is filed to add individual Police Officer defendants and to add additional causes of action.

2.     Plaintiffs' claims arise from April 5, 2020 and April 8, 2020 incidents in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected Plaintiffs to, inter alia, illegal stops, false arrest, false imprisonment, assault and battery.

3.     Plaintiffs seek monetary damages (special, compensatory and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as this court deems just and proper.

## JURISDICTION

4.     This action is brought pursuant to 28 U.S.C. Section 1331; 28 U.S.C. Section 1343; 42 U.S.C. Sections 1983, 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. The amount in controversy exceeds $10,000 excluding interest and costs.

5.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under the state law that are so related to claims in this action within the original jurisdiction of this Court and that form part of the same case or controversy.

**VENUE**

6.      Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b) because the Defendant does business and is located within the Eastern District of New York and because all or a substantial part of the acts or omissions giving rise to plaintiffs' claims occurred within the Eastern District of New York.

**PARTIES**

7.      Plaintiff, Lavon Bartholomew, hereinafter ("Plaintiff" or "Bartholomew") resides in Brooklyn, New York, and is a citizen of the United States.

8.      Plaintiff, Denzel Bobb, hereinafter ("Plaintiff" or "Bobb") resides in Brooklyn, New York, and is a citizen of the United States.

9.      Plaintiff, J'Chad Boyce, hereinafter ("Plaintiff" or "Boyce") resides in Brooklyn, New York, and is a citizen of the United States.

10.     Plaintiff, Shaundell Hennegan, hereinafter ("Plaintiff" or "Shaundell") resides in Brooklyn, New York, and is a citizen of the United States.

11.     Plaintiff, Curtis Miller, hereinafter ("Plaintiff" or "Miller") resides in Wyandanch, New York, and is a citizen of the United States.

12.     Plaintiff, Shaquweice Mills, hereinafter ("Plaintiff" or "Mills") resides in Brooklyn, New York, and is a citizen of the United States.

13.     All Plaintiffs referred to collectively as "Plaintiffs".

14.     At all times hereinafter mentioned the CITY OF NEW YORK (or "the City") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York. At all times relevant hereto, Defendant City of New York, acting through the New York City Police Department (or "NYPD"), was responsible for

the policy, practice, supervision, implementation and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline, retention and conduct of all NYPD personnel. In addition, at all times here relevant, defendant City of New York was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York. Further, under the Charter of the City of New York, the City is responsible for the conduct of municipal agencies such as the New York City Police Department or ("Police Department").

15.  At all times hereinafter mentioned the NEW YORK CITY POLICE DEPARTMENT was and is a municipal agency of the CITY OF NEW YORK and was charged with the responsibility of enhancing the quality of life in New York City by working in accordance with constitutional rights to enforce the law.

16.  At all times relevant herein defendant Lt. Alexander Bobo was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief, Lt. Bobo took part in the unlawful events that occurred on April 5, 2020 in the confines of the command of the 073 Precinct. At all times relevant defendant Bobo acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Bobo is sued in his official and individual/personal capacity.

17.  At all times relevant herein defendant Sgt. Darren Caranella was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Sgt. Caranella took part in the unlawful events that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant Caranella acted under color of state law in the course and scope of his duties

-4-

and functions as an agent, servant, employee, and officer of the NYPD. Defendant Caranella is sued in his official and individual/personal capacity.

18.     At all times relevant herein defendant P.O. Richard Catapano a/k/a Estate of Richard Catapano was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Catapano took part in the unlawful events that occurred on April 8, 2020 in the confines of the 073 Precinct. At all times relevant defendant Catapano acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Catapano is sued in his official and individual/personal capacity. The Estate of Richard Catapano is named in that capacity.

19.     At all times relevant herein defendant P.O. Vincent D'Andraia was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer D'Andraia took part in the unlawful events that occurred on April 8, 2020 in the confines of the 073 Precinct. At all times relevant defendant D'Andraia acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant D'Andraia is sued in his official and individual/personal capacity.

20.     At all times relevant herein defendant Sgt. Steven Franzel was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Sgt. Franzel took part in the unlawful events that occurred on April 8, 2020 in the confines of the 073 Precinct. At all times relevant defendant Franzel acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Franzel is sued in his official and individual/personal capacity.

21.     At all times relevant herein defendant Sgt. Samuel Hui was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Sgt. Hui took part in the unlawful events that occurred on April 8, 2020 in the confines of the 073 Precinct. At all times relevant defendant Hui acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Hui is sued in his official and individual/personal capacity.

22.     At all times relevant herein defendant P.O. Charles Ji was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Ji took part in the unlawful events that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant Ji acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Ji is sued in his official and individual/personal capacity.

23.     At all times relevant herein defendant P.O. Michael John was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer John took part in the unlawful events that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant John acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant John is sued in his official and individual/personal capacity.

24.     At all times relevant herein defendant P.O. Michael Parscale was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Parscale took part in the unlawful events

that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant Parscale acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Parscale is sued in his official and individual/personal capacity.

25.     At all times relevant herein defendant Sgt. Troy Peacock was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Sgt. Peacock took part in the unlawful events that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant Peacock acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Peacock is sued in his official and individual/personal capacity.

26.     At all times relevant herein defendant P.O. Brian Ramirez was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Ramirez took part in the unlawful events that occurred on April 5, 2020 and was under the command of the 073 Precinct. At all times relevant defendant Ramirez acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Ramirez is sued in his official and individual/personal capacity.

27.     At all times relevant herein defendant P.O. Christopher Read was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Read took part in the unlawful events that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant Read acted under color of state law in the course and scope of his duties and

functions as an agent, servant, employee, and officer of the NYPD. Defendant Read is sued in his official and individual/personal capacity.

28.     At all times relevant herein defendant P.O. Stephen Rice was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Rice took part in the unlawful events that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant Rice acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Rice is sued in his official and individual/personal capacity.

29.     At all times relevant herein defendant P.O. Sean Slowski was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Ramirez took part in the unlawful events that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant Slowsky acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Slowsky is sued in his official and individual/personal capacity.

30.     At all times relevant herein defendant P.O. Keith Stark was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Stark took part in the unlawful events that occurred on April 8, 2020 in the confines of the 073 Precinct. At all times relevant defendant Stark acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Stark is sued in his official and individual/personal capacity.

31.     At all times relevant herein defendant P.O. Justin Vasquez was employed by the City of New York through the New York City Police Department ("NYPD").  On information and belief Officer Vasquez took part in the unlawful events that occurred on April 5, 2020 in the confines of the 073 Precinct. At all times relevant defendant Vasquez acted under color of state law in the course and scope of his duties and functions as an agent, servant, employee, and officer of the NYPD. Defendant Vasquez is sued in his official and individual/personal capacity.

32.     At all times relevant herein defendant Police Officers John and Jane Doe, as yet to be identified, were employed by the City of New York through the New York City Police Department ("NYPD"). At all times relevant defendants acted under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of the NYPD.  John and Jane Doe Police Officers are sued here in their official and personal capacity.

## ADMINISTRATIVE PROCEEDINGS

33.     On April 5, 2020, within ninety days after the claims arose, Plaintiffs caused a Notice of Claim, in proper form, to be duly filed with the Comptroller's Office and 30 days has passed and the claims have not been paid or adjusted. This action is brought within one year and ninety (90) days limitation of time applicable to state law claims against the City of New York.

## STATEMENT OF CLAIM
### APRIL 5, 2020 EVENTS

34.     On April 5, 2020 at approximately 5:11 p.m. plaintiff Shaundell Hennegan, a/k/a "Pooh Bear," Tysean Hennegan a/k/a "Ty," and plaintiff J'chad Boyce a/k/a "Talle" were standing in front of a residential apartment building located at 788 Howard Avenue, Brooklyn, New York.

35.     Plaintiff Curtis Miller a/k/a "Curt" was seated in the front passenger seat of a 2019 black Jeep Cherokee owned by Tysean Hennegan. The Jeep Cherokee was double parked in front of 788 Howard Avenue.  At all times relevant hereto the Jeep Cherokee engine was turned off and the keys were not in the ignition.

36.     Two  (2) Hispanic male police officers (Ramirez and Vasquez) were driving a white and blue marked police car. Police yelled at the men and said, in sum and substance, you're not standing six feet apart. The marked police car drove around the block and came back and stopped in front of the double-parked Jeep Cherokee. Two police officers exited their vehicle and said to the men in substance you're not socially distanced so either go into the building or go into the car referring to the Jeep Cherokee. Whereupon, plaintiff Shaundell Hennegan went into the front driver's side seat of the Jeep Cherokee and sat down.

37.     Police Officer Ramirez demanded to see the person occupying the driver's seat, plaintiff Shaundell Hennegan's, driver's license. Plaintiff Shaundell complied.

38.     Police Officer Vasquez, described as a bald Hispanic male, demanded to see identification from plaintiff Curtis Miller too. Miller replied "no" and P.O. Vasquez replied show me some I.D. or I will take you to jail. Curtis replied that he should take him to jail because he was not driving the car and was not doing anything wrong. At that time plaintiff Miller began to video record the scene with his cell phone.  P.O. Vasquez slapped the cell phone out of Miller's hand and began to strike Miller about the body.

39.     At approximately the same time as plaintiff Shaundell Hennegan began to video record what was happening to plaintiff Miller is when plaintiff Shaundell Hennegan was thrown facedown to the ground by police officer Defendants.  P.O. Brian Ramirez, struck Plaintiff Shaundell Hennegan numerous times with an extendable bit

stick about his body and extremities while defendants Sgt. Darren Caranella, P.O. Sean Slowski, Sgt. Troy Peacock and P.O. Christopher Read  physically pinned and held Plaintiff Shaundell Hennegan  down on the ground, with their knees on Plaintiff Shaundell Hennegan 's back and legs as they pulled his arms upward and twisted and contorted Plaintiff's body, legs and arms while placing handcuffs on him.

40.     Plaintiffs Shaundell Hennegan and Curtis Miller were taken to the 073 Precinct stationhouse. When placing plaintiff Curtis Miller into the back of the police car P.O. Vasquez snidely asked plaintiff Miller how does it feel getting beat up?  While at the 073 Precinct stationhouse, P.O. Ramirez forcibly sat plaintiff Miller down in a chair by grabbing him by his shirt collar while he was hand cuffed behind his back after plaintiff Miller said that he preferred to stand up.

41.     While at the 073 Precinct stationhouse P.O. Ramirez said to plaintiff Miller, I didn't touch you—but I fucked your two boys up! Whereupon, plaintiff Miller reminded Ramirez that he choked him in the precinct.

42.     Plaintiffs Shaundell Hennegan and Curtis Miller were released from the back door of Central Booking at approximately 3:00 p.m. on April 6, 2020.  Plaintiff Shanudell Hennegan sustained certain injuries as a result of the beating including, but not limited to, a hernia, a swollen and lacerated left leg, and contusions to both legs. He suffered pain in the lower back for at least five (5) days together with mental and emotional pain and suffering.

43.     Plaintiff Curtis Miller sustained contusions to the ribs, the right shoulder and the right thigh, together with mental and emotional pain and suffering.

44.     Neither Shaundell Hennegan nor Curtis Miller were permitted to make a phone call.

45.    As plaintiff Boyce was attempting to video record the assault on plaintiffs Miller and Shaundell, plaintiff J'Chad Boyce male black, was also struck and beat about his face and body by Police Officers Ramirez, Vasquez and other officers while standing in front of 788 Howard Avenue on April 5, 2020 sometime shortly after 5:00 p.m.

46.    Officer Ramirez charged at plaintiff Boyce and struck him with a closed fist in the face and about the body, by this time police back up had arrived on the scene, consisting of several police cars and police officers. Defendant Police Officers Charles Ji, Michael John, Stephen Rice, Sgt. Troy Peacock, Lt. Alexander Bobo and Michael Parscale jumped in and shoved Boyce against the building while pummeling him and lifting him from his feet.

47.    Police Officers surrounded Boyce and moved him into the vestibule inside of 788 Howard Avenue where the above-named officers pinned Boyce to the ground, placed their hands and knees on his body and struck him about his legs and punched him in his ribs with closed fists.  Defendant Police Officers twisted his arms upward while Plaintiff was screaming in pain. Defendant P.O. Stephen Rice tased plaintiff Boyce for several seconds on his backside (butt).

48.    Police Officers slammed Plaintiff to the ground and placed a knee in his neck and handcuffed him behind his back. Plaintiff was placed in the back of a police car and taken to the 073 Precinct.

49.    Officer Vasquez taunted plaintiffs Hennegan, Curtis and Boyce every time he passed by them in the precinct by throwing up hand gestures and sticking his tongue out.

50.    Plainiff J'Chad Boyce was released with plaintiffs Hennegan and Miller at approximately 3:00 p.m. on April 6, 2020 from the back door of Central Booking.

51.     Upon information and belief, none of the three arrested Plaintiffs were fingerprinted, photographed or charged with any crime(s). They did not go to court, and they did not see a judge. Instead, they were arrested, taken into custody without being charged (which would have allowed them to go in front of a Judge to explain what had happened) and then released out the back door of the precinct so that their experience could not be documented.

52.     When plaintiffs Boyce, Hennegan and Miller returned to the precinct on April 6, 2020 to retrieve their personal belongings, P.O. Vasquez attempted to intimidate them and said in sum and substance, while pointing at plaintiff Boyce,: don't get beat up again, be safe out here.

53.      Plaintiff J'Chad Boyce received injuries that included: four lacerations, contusions and swelling to the face, lip, jaw pain, ankle pain, severe back pain, wrist contusions and lacerations, pain and suffering, mental emotional pain and anguish.

## APRIL 8, 2020 EVENTS

54.     On April 8, 2020 at approximately 10:10 p.m. plaintiff Denzel Bobb was seated in the driver's seat of his automobile described as a blue 2008 Jeep Cherokee. Plaintiff Shaundell Hennegan was seated in the front passenger seat of the car and plaintiff Shaqweice Mills was seated in the rear seat of the car driven by Plaintiff Bobb. Plaintiff Bobb's car was double parked in front of 788 Howard Avenue, Brooklyn, New York. Plaintiff Bobb drove around the block looking for a parking space.  As plaintiff Bobb was about to park in a parking space in front of a laundromat located on Howard Avenue between Dumont and Levonia in Brooklyn, two unmarked police cars stopped the car. One police car stopped in back of the car and the other police car stopped in front of the car. The occupants were dressed in plain clothes.

-13-

55.     One of the police officers, Sgt. Samuel Hui, described as a clean-shaven Asian male wearing a dark blue hooded sweatshirt and dark colored baseball cap asked plaintiff Bobb if he knew why he was being pulled over? Plaintiff Bobb answered no. The Officer replied because your left tail-light is out. More questions and answers ensued when the officer asked plaintiff Bobb if the car was stolen? Plaintiff Bobb responded no, the officer replied are you sure? Plaintiff Bobb said yes. The officer then asked plaintiff Bobb for his automobile registration.

56.     As plaintiff Denzel Bobb opened the glove compartment of this vehicle to retrieve the registration he was forcefully pulled out of the vehicle, thrown to the ground, and cuffed behind his back. Upon information and belief, defendant Sgt. Steven Franzel described as a white male with a beard wearing a black and red baseball cap and gray hooded cardigan sweatshirt and defendant P.O. Keith Stark, described as a white male with a beard wearing a dark-colored hooded sweatshirt, raised Plaintiff Bobb back up to his feet whereupon, defendant Sgt. Samuel Hui punched plaintiff Bobb in his stomach twice with a closed fist causing plaintiff Bobb to collapse to the ground again. While plaintiff Bobb was on the ground, defendant Sgt. Hui put his knee into the middle of plaintiff Bobb's back and pressed really hard hurting plaintiff Bobb in his front chest sternum area. The registration for the Jeep Cherokee was retrieved from the glove compartment.

57.     Plaintiff Denzel Bobb had taken a shot of Jamaican rum, honey and lime to fight off a cold just prior to getting into the car to find a place to park.

58.     Police Officers took plaintiff Denzel Bobb to the 073 Precinct stationhouse. He was charged with Driving While Under the Influence ("DWI"). On

April 9, 2020 plaintiff Bobb pled guilty to a traffic infraction in full satisfaction of the charge filed against him.

59.     Plaintiff Denzel Bobb suffered pain and injury to essentially the sternum area of his chest, both wrists were hurt as the result of handcuffs being placed on too tight, scrapes and scratches to his arm(s) and shoulder(s).  Plaintiff also suffered severe pain to his lower and middle back and to his neck.

60.     On April 8, 2020 at approximately 10:10 p.m. plaintiff Lavon Bartholomew was walking in the vicinity of 824-820 Howard Avenue between Dumont and Lavonia in front of a laundromat when he saw a black Ford Taurus sedan stop plaintiff Denzel Bobb's Jeep Cherokee.  He saw police go over to and pull plaintiff Denzel Bobb out of the vehicle and punch him with their closed fists.

61.     Plaintiff Bartholomew saw five plainclothes defendant police officers:  (1) Sgt. Steven Franzel described as a white male with a beard wearing a black and red baseball cap and gray hooded cardigan sweatshirt; (2) PO Keith Stark described as a white male with a beard wearing a dark-colored hooded sweatshirt; (3) Sgt. Samuel Hui described as a clean-shaven Asian male wearing a dark blue hooded sweatshirt and dark colored baseball cap; (4) P.O. Richard Catapano described as a bearded white male wearing a gray and blue plaid shirt; and (5) P.O. Vincent D'Andraia described as a white male with a beard wearing a gray t-shirt with blue vest over it and tattoos on his arms. Plaintiff Bartholomew began to video record the scene with his cell phone.

62.     Defendant P.O. Keith Stark walked over to plaintiff Bartholomew and told him to turn the light off his camera. Plaintiff complied and that officer walked away. Another plainclothes police officer believed to be defendant PO Vincent D'Andraia came over to plaintiff Bartholomew and began to argue with Plaintiff. Either defendant

D'Andraia or defendant Stark slapped Plaintiff's cell phone out of his hand and the cell phone went flying.  As Plaintiff went to retrieve his cell phone defendant Officers Keith Stark, Vincent D'Andraia and Richard Catapano tackled him and beat and pummeled Plaintiff for more than two (2) minutes with their closed hands and feet.

63.     One of the officers believed to be defendant Richard Catapano placed his knee in Plaintiff Bartholomew's back, handcuffed him behind his back and then smashed his head against the concrete sidewalk while Plaintiff was still handcuffed behind his back. Plaintiff was then dragged by those same plainclothes police officers to a black Ford Taurus unmarked police car and taken to the 073 Precinct stationhouse. On April 8, 2020 Plaintiff was charged with assault on an officer and obstruction of governmental administration.  Plaintiff was not allowed to see a judge in person, but did see a judge over skype. Plaintiff was offered and accepted an Adjournment in Contemplation of Dismissal ("ACD").

64.     The plainclothes officers are described as four (4) white males wearing beards and one clean shaven Asian American male all in their early to mid-30's.  They are believed to be defendants Richard Catapano, Vincent D'Andraia, Keith Stark, Sgt. Steven Franzel and Sgt. Samuel Hui. At the 073 Precinct stationhouse one of the officers attempted to intimidate Plaintiff by saying in sum and substance to him if you want to fight we could go to the back or upstairs.

65.     Plaintiff Lavon Bartholomew suffered injuries because of the beating and placement of too tight handcuffs.  He received injuries to his right wrist, right side eyebrow (orbital bone) facial laceration and contusions and swelling to the left eye.  As a result of the beating Plaintiff's eyes were very sensitive to the light, his eyes hurt badly and he suffered headaches that caused substantial pain and suffering. The attack by the

police officers caused Plaintiff to vomit throughout the night. He had swelling and bruising everywhere on his body, scrapes on his face, pain in lower back and pain in his neck that was on-going.

66.     On April 8, 2020 at approximately 10:10 p.m. plaintiffs Shaundell Hennegan and Shaqweice Mills were taken out of the Jeep Cherokee by defendants Franzel and Catapano. The Asian American officer, defendant Sgt. Samuel Hui, made them sit on the ground behind the Jeep Cherokee rear bumper with their hands up for the entire time of the incident. Defendant Hui unholstered his yellow taser and brandished it at them saying stay there and don't move. Plaintiffs Hennegan and Mills were taken to the 073 Precinct. At approximately 12:30 a.m. on April 9, 2020 Plaintiffs were released. Plaintiff Hennegan was not charged with anything and not fingerprinted or photographed. Plaintiff Mills was arrested and charged with disorderly conduct, given a Desk Appearance Ticket ("DAT") and told to come back to court on August 5, 2020. He was not fingerprinted or photographed.  Neither Plaintiff was allowed to go in front of a Judge.

67.     At all times during the events described above, the Defendants were engaged in a joint venture and formed an agreement to violate Plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. Police failed to intervene in the obviously illegal actions against Plaintiffs. During all of the above-described events, Defendants acted maliciously and with intent to injure Plaintiffs.

**CONSPRIRACY PURSUANT
TO  28 U.S.C. SECTION 1985 (3)**

68.     Upon information and belief, multiple police officers were dispatched from the 073 precinct and other precincts to the vicinity of 788 Howard Avenue on April 5, 2020 and April 8, 2020 where upon information and belief police were unlawfully searching for contraband under pretextual circumstances. On April 5, 2020 P.O.'s Ramirez and Vasquez stopped Plaintiffs in front of 788 Howard Avenue under the pretext of utilizing the *Covid-19* Pandemic as an excuse to order Plaintiffs into their home. When Plaintiffs voiced their objection to the police order, defendants Ramirez and Vasquez took that opportunity to stop, detain and illegally search the persons of plaintiffs Shaundell Hennegan and Curtis Miller and to unlawfully search the vehicle they were seated in.

69.     When pedestrians in the neighborhood, including plaintiff J'Chad Boyce complained, police officers including, but not limited to, defendants Ramirez and Vasquez and several other police officers from various police commands came to the scene and physically detained Plaintiffs.  The police by pummeled and punched Plaintiffs so that they would not escape  the illegal searches.  Police defendants also took the opportunity to further illegally search Plaintiffs, including plaintiff J'Chad Boyce.

70.     On April 8, 2020 police defendants again used pretext and ruse to stop plaintiff Denzel Bobb in the vicinity of 788 Howard Avenue when he was looking for a parking space.  Police ask plaintiff Bobb a series of questions that were a pretext for the stop and asked for the vehicle registration.  When plaintiff Bobb went to get the vehicle registration defendant Sgt. Hui and the other police defendants took that opportunity to drag plaintiff Bobb and the other plaintiffs: Shaundell Hennegan and Shaqweice Mills out of the vehicle where each Plaintiff was searched and the entire vehicle was searched. However, no contraband or firearms were found.

71.     Defendant police actions against Plaintiffs (all black males) amount to warrantless searches without consent. Upon information and belief, police were actually searching in a primarily Black neighborhood for contraband that they believed Plaintiffs possessed. The actions of the Police defendants when they restrained, detained, searched, arrested and physically harmed, harassed and intimidated Plaintiffs for the purpose of searching for and seizing contraband without a warrant within the vicinity of 788 Howard Avenue, denied Plaintiffs the equal protection of the laws and the equal privileges and immunities of the law namely: denial of Plaintiffs' right not to be subjected to unlawful searches and seizures and Fourteenth Amendment rights to the equal protection of the laws and to life, liberty, property and the pursuit of happiness in violation of the United States Constitution's Fourth Amendment. Upon information and belief, Defendants conspired to violate section 1985(3) on the basis of Plaintiffs' race.

72.     The source of Plaintiffs' belief in this conspiracy, and a pattern and practice of harassment,  and intimidation by two or more members of the NYPD with the intended result to impede their right to equal protection of the law, is evidenced by the example of one prior occasion, on May 5, 2016 at approximately 3:00 p.m., approximately twelve (12) plain clothes police officers most of whom were White males entered into Plaintiff Shaundell Hennegan's home in this predominantly Black neighborhood without a search warrant for the purpose of searching for and seizing contraband without first obtaining a search warrant.

73.     On that occasion, Tysean Hennegan, Black male, son of Nicole Hennegan, Black female, and brother of Shaundell Hennegan Black male was arrested and charged with gun possession. However, the Kings County District Attorney's Office declined to

-19-

authorize a search warrant and subsequently declined to prosecute the case against

Tysean Hennegan because police had not obtained a search warrant for the premises.

## MUNICIPAL LIABILITY

### For the Actions of the Police Defendants Pursuant to Policies and Practices In Existence at the Time of This Action

74.     All of the acts by the police defendants described above were carried out

pursuant to policies and practices of the City of New York which were in existence at the

time of the conduct alleged herein and were engaged in with the full knowledge, consent,

and cooperation and under the supervisory authority of the defendant City and its agency,

the NYPD.

75.     Defendant City and the NYPD, by their policy-making agents, servants

and employees, authorized, sanctioned and/or ratified the police defendants' wrongful

acts; and/or failed to prevent or stop these acts; and/or allowed or encouraged these acts

to continue.

76.     The actions of the police defendants resulted from or were taken pursuant

to *de facto* policies and/or well settled and widespread customs and practices of the City,

which are implemented by police officers, to prosecute and continue to prosecute persons

through fabricated and manipulated allegations without adequate basis in fact and/or

despite substantial exculpatory evidence known to them and withheld from accused

persons.

77.      The existence of such unlawful *de facto* policies and/or well–settled and

widespread customs and practices has been known to supervisory and policy–making

officers and officials of the NYPD and the City for a substantial period of time.

78.     Despite knowledge of such unlawful *de facto* policies and practices, these supervisory and policy-making officers and officials of the NYPD and the City and their predecessors in interest did not take steps to terminate these policies and practices, did not discipline individuals who engaged in such practices, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or reckless disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the City of New York.

79.     The City's policies and practices in existence at the time of the conduct complained of herein, which caused the plaintiff's injuries herein include, *inter alia*, the following:

a. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper conduct and investigation at and in relation to a crime scene;

b. The failure to properly supervise, train, instruct, and discipline police officers with regard to a public stop of an individual(s).

80.     The aforementioned City policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encourage their misconduct as evidenced by the police misconduct detailed herein.

81.     The aforementioned City policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encourage their misconduct as evidenced by the unlawful stops, detainments, arrests, assaults and batteries as detailed herein are of the type that can be eliminated or drastically curtained by proper training at the police academy and proper follow-up training courses in the area of constitutional and

citizen's Fourth Amendment rights to the Constitution to be free of unreasonable searches and seizures.

82.     The aforementioned unlawful stops, detainments, arrests, assaults and batteries that occurred in the vicinity of 788 Howard Avenue in the Brownsville Section of Brooklyn through police misconduct came as a result of a lack of proper training and sensitivity to the constitutional rights of black and brown peoples that live in urban inner city communities such as inhabited by Plaintiffs in Brownsville, Brooklyn and other communities in the City of New York.

83.     Furthermore, the aforementioned unlawful stops, detainments, arrests, assaults and batteries also resulted from a lack of proper police officer discipline, including but not limited to, a lack of terminations, demotions, reprimands, suspensions, loss of pay, re-training, and/or sensitivity training. These are the types of disciplines that should and could alleviate much of the type of unlawful police conduct as is complained of herein.

84.     The City policies, practices and customs in existence at the time of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are further evidenced, *inter alia*, by the following:

85.     Upon information and belief, defendant City and its agency, the NYPD, failed to effectively screen, hire, train, supervise and discipline their police officers, including the defendant police officers herein, for racial bias, lack of truthfulness, and for their failure to protect citizens from the unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers to be in a position to unlawfully abuse and violate plaintiffs in their physical well-being and their right to be free from unlawful and unjust policing.

-22-

86.     On information and belief, the defendant police officers herein may have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to defendant City and its agency, the NYPD, that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiffs herein.

87.     The Plaintiffs' injuries were a direct and proximate result of the defendants' wrongful policies, practices, customs and/ or usages complained of herein and in existence at the time of the incidents complained of herein and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers.

88.     Defendant City knew or should have known that the acts alleged herein would deprive plaintiffs of their rights, in violation of the Fourth Amendment to the United States Constitutions and Article 1 §§ 1, 6, 11, 12 of the Constitution of the State of New York, including, without limitation, freedom from deprivation of liberty without due process of law.

89.     The defendant City is directly liable and responsible for the acts of its agency the NYPD and of the named and unnamed defendant police officers, because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

90.     The defendant City is also directly liable and responsible for the acts of the individual police officer defendants for state law claims under the doctrine of respondent superior.

## **DAMAGES**

91.     As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

     a.     Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of their person;

     b.     Violation of their right to Due Process of law under the Fourteenth Amendment to the United States Constitution;

     c.     Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from unreasonable search and seizure;

     d.     Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

     e.     Violation of New York State statutory and common law rights;

     f.     Physical pain and suffering;

     g.     Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

     h.     Loss of liberty;

     i.     Other damages to be established at the trial of this matter.

## **FOR A FIRST CAUSE OF ACTION**

**(Violation of Rights Secured by 42 U.S.C. § 1983 and the
Fourth Amendment to the United States Constitution)**

92.     The above paragraphs are here incorporated by reference.

93.     Defendants, acting under color of state law, deprived Plaintiffs of their civil, constitutional and statutory rights under color of law and have conspired to deprive Plaintiffs of such rights and are liable to Plaintiffs under 42 U.S.C. § 1983.  Defendants subjected Plaintiffs to the foregoing unlawful acts, and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving plaintiffs of rights, privileges and immunities secured by the Constitution and laws, including, but not limited to, those rights, privileges and immunities secured by the Fourth Amendment and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights, privileges and immunities:

94.     Plaintiffs were denied their constitutional right to be free from unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

95.     To the extent that any of these constitutional deprivations require a showing of specific intent and/or motive, the individual defendants acted intentionally, maliciously, with racially discriminatory motives and/or with reckless disregard for the natural and probable consequences of their acts.

96.     Defendants conduct also deprived plaintiffs of their right to due process of law under the Fourteenth Amendment to the United States Constitution.

Defendants falsely arrested, assaulted and battered plaintiffs and failed to intervene in each other's obviously unlawful actions.

97.     Defendants' unlawful acts, and omissions, conducted without lawful justification, caused specific physical, mental and emotional harm, economic injury, pain and suffering in violation of plaintiffs' Constitutional rights as guaranteed under 42

U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

**FOR A SECOND CAUSE OF ACTION**
**(Municipal and supervisory liability)**

98.    The above paragraphs are here incorporated by reference.

99.    The City is liable for the damages suffered by plaintiffs as a result of their employees, agents and servants, in that after learning of their employees violation of plaintiffs constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful conditions or events. The City has been alerted to the regular use of excessive force, targeted harassment and false arrests caused by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

100.    The aforesaid events were not isolated incidents. The City has been aware for quite some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a mater of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

101.    The City is liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents and servants, in that after learning of their employees'

violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful conditions and events. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

**FOR A THIRD CAUSE OF ACTION**
**(Gross Negligence and Negligence)**

102.    The above paragraphs are here incorporated by reference. Defendant City of New York and the Supervisors present at the scenes of misconduct described above, have been grossly negligent and negligent in the supervision, training and monitoring of its officers who are suspected of crimes and misconduct or police officers who are witnesses to crimes and misconduct by their fellow officers.

103.    The City of New York has a duty to make sure its officers do not violate their duties as police officers to report crimes and misconduct, including those of other officers.

104.    Defendant City of New York knew or should have known that NYPD policies and practices have contributed to improper concealment of excessive force by police officers to cover up crimes and misconduct.

105.    Defendant City of New York knew or should have known that NYPD policies and practices as well as its grossly negligent and negligent supervision and training of officers created an atmosphere where violent police officers felt assured that

their most brazen acts of misconduct would not be swiftly and effectively investigated and prosecuted.

106.    The mistreatment and abuse of plaintiffs previously set forth and the subsequent failure to investigate these events were reasonably foreseeable results of Defendants' negligent conduct.

## FOURTH CAUSE OF ACTION
### (Conspiracy)

107.    The above paragraphs are here incorporated by reference.

108.    Defendants agreed to violate plaintiffs' rights in the manner described above. Further defendants made an agreement to cover up the false arrests, assault and battery by charging for example, assault on a police officer and obstruction of governmental administration. Defendants took action in furtherance of this agreement by arresting plaintiffs,  including Lavon Bartholomew and attempting to bring charges against them and then releasing them without affording them an opportunity to appear before a Judge to state their complaints.

109. Plaintiffs were injured as a result of defendants' conspiracy.

## FIFTH CAUSE OF ACTION
### (Prima Facie Tort)

110.    The above paragraphs are here incorporated by reference.

111.    By their actions, as set forth above, all Defendants inflicted harm upon Plaintiffs without excuse or justification, out of malice.

## SIXTH CAUSE OF ACTION
### (Constitutional Tort )

112.    The above paragraphs are here incorporated by reference.

113.    Defendants, acting under color of law, violated plaintiffs rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

114.    A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

**SEVENTH CAUSE OF ACTION**
**(Negligent Hiring & Retention)**

115.    The above paragraphs are here incorporated by reference.

116.    Defendant City, through the NYPD, owed a duty of care to Plaintiffs to prevent the loss of liberty and physical, mental and emotional abuse sustained by Plaintiffs.

117.    Defendant City, through the NYPD, owed a duty of care to Plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to Plaintiffs or those in a position similar to Plaintiffs as a result of this conduct.

118.    Upon information and belief, defendant officers were incompetent and unfit for their positions.

119.    Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous and had previously falsely arrested civilians without probable cause.

120.    Defendant City's negligence in hiring and retaining the officer defendants proximately caused Plaintiffs' injuries.

121.    Because of the defendant City's negligent hiring and retention of defendant officers, Plaintiffs incurred the damages described above.

## FOR A EIGHTH CAUSE OF ACTION
### (Respondeat Superior Against the City of New York)

122.     The above paragraphs are here incorporated by reference.

123.     Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

124.      As a result of Defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiffs were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally as follows:

A.  In favor of Plaintiffs in an amount to be determined by a jury for each of Plaintiffs' causes of action;

B.  Awarding Plaintiffs punitive damages in an amount to be determined by a jury;

C.  Awarding Plaintiffs reasonable attorneys fees, costs and disbursements of this action; and

D.  Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

A jury trial is hereby demanded on each and every count of the causes of action as pled herein.

-30-

Brooklyn, New York
April 27, 2022

Respectfully submitted,

*\s\ Gregory Smith*

_____
Gregory G. Smith (GS-9900)
Attorney for Plaintiffs
77 Sands Street, 7th Floor
Brooklyn, New York 11201
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**  **Index No: 21-CV-3729(LDH)(LB)**

---

LAVON BARTHOLOMEW, et al.,

                                    Plaintiffs,


      -against-


CITY OF NEW YORK, et al.,



                                    Defendants.

---
---

### AMENDED COMPLAINT

---
---

                    **GREGORY G. SMITH, ESQ.**
                    *Attorney for the Plaintiff*
                    **77 Sands Street**
                    **Brooklyn, New York 11201**
                    **PHONE: (917) 748-2623**

---

To Attorney(s) for the People:



---

Service of a copy of the within is hereby admitted.


Dated:

                    _____


*Attorneys for*

---